THE STATE ex rel. JOHN C. LONG v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals, and MARGUERITA CLARK.

In Banc, December 22, 1917.

1. **APPELLATE JURISDICTION: Amount in Dispute: Not Considered by Court of Appeals: Decided on Certiorari.** Although the Court of Appeals did not expressly rule that the amount in dispute did not exceed $7,500, yet if it assumed jurisdiction, the Supreme

State ex rel. v. Ellison.

Court will upon *certiorari*, without reference to harmony of opinions, quash its decision, if the amount in dispute exceeded $7,500.

2. ———: ———: **Appeal from Order Granting New Trial.** It is the amount involved in the appellate court that fixes appellate jurisdiction, and not what may be involved in the trial court on a new trial. Where plaintiff sued for $10,000 and recovered verdict for $10,000, and filed a *remittitur* for $2,500, and the plaintiff appealed from an order granting a new trial, the amount in dispute in the appellate court, from the standpoint of both plaintiff and defendant, was $7,500, and the Court of Appeals had jurisdiction.

3. **CERTIORARI: Directed Judgment.** On *certiorari*, issued to a court of appeals on the ground that its opinion therein is contrary to previous rulings of the Supreme Court, the latter court, if it quashes the decision of the other, will not direct a judgment in the case, or tell it what to do when it undertakes to make a new record. The Supreme Court will only uphold or quash the judgment of the court of appeals, presuming that upon questions ruled that court will follow its rulings.

4. **INSTRUCTION: Omission of Necessary Element: Cured by Others.** An instruction purporting to cover the whole case and directing a verdict for plaintiff, from which is omitted an element of negligence necessary to plaintiff's right to recover, cannot be cured by one given for defendant; and a holding by the Court of Appeals that such omitted necessary element is supplied by other instructions given, contravenes certain previous rulings of the Supreme Court, and requires that its decision be quashed.

   *Held*, by BLAIR, J., dissenting, that the Court of Appeals erred in holding that the instruction was erroneous or that it omitted any element necessary to plaintiff's right to recover, and that being true its opinion cannot be quashed for that it further erred in holding that the omission was supplied by other instructions given.

## *Certiorari.*

RECORD QUASHED.

*Rees Turpin* and *John B. Pew* for relator.

(1) The respondent judges failed and refused to follow the last controlling decisions of this court. The conflict is between this decision and the decision of this court in Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260. And said instruction is in obvious and irreconcilable

conflict with the decision in Hall v. Coal Company, 260 Mo. 369. The St. Louis Court of Appeals has construed the foregoing decisions of this court by direct reference in the following cases and such construction is in direct, obvious and irreconcilable conflict with the opinion of said respondent judges in the cases at bar. Said cases are: Trayler v. White, 185 Mo. App. 325; Humphreys v. Railway, 191 Mo. App. 710; Walker v. White, 192 Mo. App. 13; Rissmiller v. Railway, 187 S. W. 573; Pearson v. Lafferty, 193 S. W. 40.

*Hogsett & Boyle* for respondents.

(1) This court may say that the decision of the Court of Appeals conflicts in certain particulars with previous rulings of this court and quash only that portion of the opinion, permitting the judgment to stand if it is for the right party. State ex rel. v. Reynolds, 194 S. W. 878. (2) This court may inquire into the correctness of the decision with which it is claimed the opinion of the Court of Appeals is in conflict, and overrule such decision and sustain the opinion of the Court of Appeals. State ex rel. v. Reynolds, 186 S. W. 1057. (3) This court has no jurisdiction to enter judgment in the case out of which the proceedings in *certiorari* arose, but will simply quash or sustain the opinion of the Court of Appeals as the circumstances warrant. State ex rel. v. Reynolds, 186 S. W. 1072; State ex rel. v. Ellison, 186 S. W. 1075. (4) The opinion of the respondent judges in holding that the omission in plaintiff's instruction for a verdict was cured by an instruction given at the instance of defendant is not in conflict with the decisions of this court. Shaw v. Kansas City, 196 S. W. 1099; Salmons v. Railway, 197 S. W. 37; Tawney v. United Railways, 262 Mo. 602; Tranbarger v. Railroad, 250 Mo. 59; Railroad Co. v. Kemper, 256 Mo. 279; Railway v Stewart, 201 Mo. 499; Lange v. Railroad, 208 Mo. 477; Meily v. Railroad, 215 Mo. 587-8; Meadows v Life Ins. Co., 129 Mo. 97; Hughes v. Railway, 127 Mo. 452-3; Owens v Railway, 95 Mo. 181. The St. Louis Court of Appeals has announced this rule in: Bliesner v. Distilling Co., 174 Mo App. 150; Pendergrass v. Rail-

road, 179 Mo. App. 534; Farmer v. Railway, 178 Mo. App.
594; Cooper v. McFarlen, 184 Mo. App. 184; Crader v.
Railroad, 181 Mo. App. 542; Dorsey v. Railroad, 175 Mo.
App. 164; Spalding v. L. & M. Co., 183 Mo. App. 657; Craig
v. Railways Co., 175 Mo. App. 616. The Springfield Court
of Appeals has announced it in: Foster v. United Zinc Co.,
189 Mo. App. 288; Quinley v. Traction Co., 180 Mo. App.
287. And the Kansas City Court of Appeals in: Steele v.
Ancient Order of Pyramids, 125 M.o App. 682; Forge Co.
v. Engine Co., 135 Mo. App. 89; Heller v. Ferguson, 189
Mo. App. 490; Davis v. Railroad Co., 192 Mo. App. 422.
(a) The instruction submits to the jury the proper theory
of negligence and is abundantly supported by the evidence.
Van Verth v. Cracker Co., 155 Mo. App. 299; Johnson v.
Bolt & Nut Co., 172 Mo. App. 214; Hawkins v. Railroad
Co., 189 Mo. App. 201, 219; Koerner v. Car Co., 209 Mo.
141. (b) The instruction does not assume the negligence
of the defendant or his foreman. (c) When the jury
were required by the instruction to find that the defend-
ant did not exercise ordinary care to prevent the board
from falling, and that in failing to exercise ordinary care
to prevent the board from falling defendant was guilty of
a careless and negligent act, they of necessity were re-
quired to find that it was negligence to permit the board to
remain there under the conditions which existed. Geary
v. Railway, 138 Mo. 259; Dammann v. St. Louis, 152 Mo.
198; Phippin v. Railway, 196 Mo. 347; Brady v. Railroad,
206 Mo. 538; State v. Grayor, 89 Mo. 605.

GRAVES, C. J.—*Certiorari* to the Kansas City
Court of Appeals, by which it is sought to quash the
record of that court in the case of Marguerita Clark,
appellant, v. John C. Long, respondent. Long is a
contractor and builder in Kansas City, Missouri, and
Marguerita Clark is the widow of Frank Clark, de-
ceased, who came to his death by being struck with a
piece of board, which fell from the roof of or scaffold-
ing beside a certain dwelling house then being con-
structed by Long. The house was in the course of con-
struction, and on the north side thereof were two
dormer windows. The sheeting had not all been fully

placed upon the east dormer window.   There was a
scaffold on this north side of the house, which was be-
ing used in the course of the work.   The evidence
shows that in the course of the work then being done,
pieces of boards one inch thick, six inches wide and of
lengths ten to sixteen feet were being used, as sheet-
ing, and that to make proper breaks in the roof, and
to cover the dormer windows, some of these boards
were sawed into shorter lengths.   Frank Clark was
working in a drive-way leading to the north side of
the said house, and near the scaffold on that side, and
under the east dormer window.   For two days the
wind had been blowing quite a gale.   The alleged neg-
ligence is thus stated in the petition, as we get it from
the opinion of the Court of Appeals: "While so work-
ing on said retaining wall said deceased was struck in
the head with a heavy board or timber, which said
defendant, his foremen, superintendents and vice-prin-
cipals in charge of and directing said work carelessly
and negligently caused, suffered, or permitted to fall
from said residence or some of the scaffolding about
said residence when said defendant, his foremen, super-
intendents and vice-principals knew, or by the exercise
of ordinary care could have known, that deceased was
working at said point, and that he would be liable to
be struck and injured by said board or timber."

The evidence does not show in positive terms from
whence the board came that occasioned the death of
Frank Clark, but it can well be inferred from the facts
shown and stated that it was blown either from the
roof near the east dormer window, or from the scaf-
fold below the roof.

For the plaintiff the court gave this instruction:

"The court instructs you that if you find from the
evidence that on October 28, 1915, and prior to Frank
Clark's injury, defendant's workmen had piled loose
pieces of lumber across the top of the east dormer
window on the north side of the roof of the building in
question (if you so find), and that at said time a
strong wind was blowing (if you so find), and that
said boards were thereby liable to be dislodged and

fall and injure persons who might be working near said residence (if you so find), and that Frank Clark, deceased, was at the time herein referred to engaged in laying stone in the automobile driveway leading to said residence from the north (if you so find), and was working in close proximity to the north wall of said residence, and at a point where he might be struck and injured by the falling of one of said boards (if you so find), and that defendant's foreman in charge of said work knew, or by the exercise of ordinary care could have known the foregoing facts (if you find them to be facts) in time by the exercise of ordinary care to have prevented any of said boards from falling, and that he carelessly and negligently failed to do so (if you so find); and if you further find from the evidence that previous to Frank Clark's injury defendant's workmen had also laid loose pieces of lumber upon the top scaffold on the north side of said building, over the place where Frank Clark was working, and that said scaffold was so constructed that it vibrated and that there was danger of said loose pieces of lumber (if any) falling from said scaffold and injuring Frank Clark, and that defendant or his foreman knew, or by the exercise of ordinary care could have known, these facts (if you so find them) in time by the exercise of ordinary care to have prevented any of said loose pieces, if any, from falling from said scaffold and injuring Frank Clark, but negligently failed to do so (if you so find); and if you further find that thereafter on said date one of said boards (if any) fell, either from said scaffold, by reason of the vibration thereof (if any), or from said dormer window, by reason of being dislodged by the wind (if any), and struck Frank Clark on the head (if you so find), and as a result thereof his skull was fractured and he thereby received injuries from which he died on or about October 30, 1915, and if you further find that plaintiff is the widow of Frank Clark, deceased, then you shall find a verdict in favor of the plaintiff and against the defendant.''

Plaintiff had a verdict *nisi* for $10,000, which was reduced by *remittitur* to $7,500. The trial court granted defendant a new trial on the ground that it was error to have given this instruction. Of this instruction the Court of Appeals said (Clark v. Long, 196 S. W. 409, 1. c. 413):

"The instruction is further criticised for the reason that it permits the jury to find for plaintiff without finding that the hypothetical facts stated in the instrucion, if true, would constitute negligence. We think this criticism of the instruction is well taken. While it is true that the jury were required to find by the instruction that the defendant did not exercise ordinary care to prevent said board from falling, and that in failing to exercise ordinary care so to prevent said boards from falling, defendant was guilty of a careless and negligent act, still it does not require the jury to find that the boards piled upon the dormer window or the scaffold were negligently permitted to remain there after they were or could have been discovered.

"The question as to whether defendant and his foreman were negligent in permitting the boards to remain at said places after they could have discovered their presence, was one for the jury, and the court should have required the jury to find that it was negligence for defendant to have so permitted them to remain. Defendant was not negligent as a matter of law in so permitting the boards to remain in such places. It was necessary in the progress of the building of the residence to have these pieces of boards near at hand as the men were working upon the siding and sheeting at the time and must of necessity have had the boards near at hand in order to carry on their work with reasonable celerity. It was necessary for these carpenters to have a place where they could temporarily place timbers which they were to use and it was for the jury to say that the places in which they actually placed the timbers were reasonably safe places under all the circumstances. We believe that this instruction taken alone was erroneous. [Lukamiski v. Foundries. 162 Mo. App. 631; Glaser v. Rothschild, 221

Mo. 180; Cross v. Northern Central Coal Co., 186 S. W. 528.] However, all of the instructions given, both for plaintiff and defendant, must be read together and if all of the instructions fairly state the law, then the vice in plaintiff's instruction is cured, and this is so even if the vice in plaintiff's instruction appears in the instruction purporting to cover the entire case. [Bliesner v. Distilling Co., 174 Mo. App. 139.]

"On behalf of the defendant the court instructed the jury that 'before you can find for the plaintiff you must find from the evidence that either John Long, the defendant, or Ed Marrs, his foreman, did something a reasonably careful man under the same circumstances would not have done, or failed to do something a reasonably careful man would have done under such circumstances, and thereby caused the death of Frank Clark.' And in another instruction the court instructed the jury that if Frank Clark was killed as the result of a mere accident, then they could not find for plaintiff, and 'by accident as used herein is meant an occurrence or casualty happening without the fault or negligence of the defendant or injured party."

"The failure of plaintiff's instruction to have the jury find that it was negligence on the part of the defendant to have permitted the boards to remain at the places given was merely an omission that might be supplied by other instructions, and we believe that this omission was fully covered by these instructions to which we have referred."

This holding is charged to be in conflict with our rulings. The Court of Appeals likewise held that the petition stated a good cause of action, and this is charged as conflicting with this court. It is also charged that the court was without jurisdiction. In relator's petition for our writ it is said: "At the time plaintiff filed her affidavit for appeal there was no money judgment in existence. The amount claimed in the petition was ten thousand dollars and the amount in dispute was ten thousand dollars, which was in excess of the jurisdiction of the Kansas City Court of Appeals. [Powers v. Missouri Pacific Railway Co., 262

Mo. 701, l. c. 705; Eads v. Kansas City Electric Light Co., 180 S. W. 994.]''

The Court of Appeals reversed the ruling *nisi* as to new trial, and reinstated the judgment for $7,500. Further details, if necessary, will follow in the course of the opinion.

I.  As to the jurisdiction of the Court of Appeals to hear the case of Clark v. Long on the appeal of plaintiff Clark, we have no doubt.  This matter is not expressly ruled in the opinion, but the whole case shows that the court assumed jurisdiction, **Appellate Jurisdiction.** and this court can always quash the record of a Court of Appeals in a case wherein such court had no jurisdiction.  And we will quash, and have quashed, such records, without reference to the matter of harmony of opinions.  To illustrate: If it appears that the Court of Appeals has exercised appellate jurisdiction in a case wherein the judgment was for $10,000, we would (without reference to the mere harmony of opinions) quash such record, because such court would have no jurisdiction over an appeal in that case.  So in the case at bar the question of jurisdiction is challenged upon the ground of jurisdiction, other than that of refusing to follow our last ruling, as well as upon the ground of such failure.  The question of jurisdiction is therefore here in its double aspect (1) that the Court of Appeals had no jurisdiction at all over the appeal in the case of Clark v. Long, and (2) that it exceeded its constitutional jurisdiction in deciding questions of law contrary to the last ruling of this court upon such questions of law.

Plaintiff was the appellant.  She had sued for $10,000 and obtained a verdict for $10,000.  This verdict the court set aside on the ground of error in the instruction which we have set out in full in our statement.  The court *nisi* then set aside this order granting a new trial, and thereupon the plaintiff entered a *remittitur* of $2,500, reducing the verdict to $7,500, and upon defendant's motion for new trial, the trial court again sustained the motion and set aside the reduced verdict of $7,500, and granted a new trial.  It is from

this last order that the appeal was taken. To my mind it is clear that the amount involved upon this appeal is $7,500, and if so the Court of Appeals had jurisdiction. By setting aside the verdict of plaintiff for $7,500, the plaintiff only lost $7,500. If the order for new trial was reversed and the verdict reinstated (as was done), the plaintiff would gain but $7,500 by the action of the Court of Appeals. She would gain just what she lost *nisi,* i. e. $7,500. If the Court of Appeals had affirmed the order granting the new trial, the plaintiff would have only lost the verdict of $7,500, and no more. So too, as to the defendant. When the verdict was reduced to $7,500, the defendant's liability was then fixed at that sum. When the court *nisi* set aside this verdict for $7,500 the defendant gained but $7,500, and had the Court of Appeals affirmed the order, it could have gained no more by that action of the Court of Appeals. On the other hand if the Court of Appeals reversed the order *nisi* (as it did) it only reinstated a liability of $7,500, and no more. So from the standpoint of both appellant and respondent, the amount involved in the Court of Appeals was only $7,500, and it is the amount involved in that court, which fixes the jurisdiction, and not what may be involved in the trial court on a new trial. The amount of the verdict set aside in the order granting a new trial, is the amount which fixes appellate jurisdiction in cases where plaintiff appeals from the order setting aside such verdict. Both Divisions of this court have so ruled. [Culbertson v. Young, 156 Mo. 261 (Div. Two.); Williams v. Railway Co., 233 Mo. l. c. 672, 674 (Div. One.).] The rule so announced should stand, and from it we are compelled to hold that as to amount the Court of Appeals had jurisdiction of the case involved in the present proceeding.

II. By the relator we are asked to direct a judgment in the case, brought here by our writ, and this is another preliminary question which had best **Judgment on Certiorari.** be eliminated at the outset. The case now before us is the *certiorari.* In this case we can only uphold or quash the record of the

Court of Appeals. At most we deal only with that record, and not with the case proper on its merits or demerits. [State ex rel. v. Ellison, 268 Mo. 238.] We have quashed a part of the opinion and sustained the remainder of the opinion and the judgment, because the reason assigned in the unquashed portion of the opinion made the judgment right, but this is as far as we have ever gone. [State ex rel. v. Reynolds, 194 S. W. 878.] If we quash the record of the Court of Appeals we have no right to tell that court what to do when it undertakes to make a new record in the case. It will be presumed that upon questions ruled, such court will follow our rulings.

III. The basis of this action is negligence. In such cases there are but two possible theories to be adopted by the trial court when such court comes to **Instruction.** instructing the jury, and they are (1) the trial court may say that if the jury find that the defendant did certain things, or omitted to do certain things, then such act or acts of the defendant would constitute negligence as a matter of law, and (2) the trial court could say to the jury that if the jury found that the defendant had done or had omitted to do specified acts, and that the doing of such things, or the failure to do such things, was negligence, as negligence was elsewhere defined, then the jury should find for the plaintiff. In other words the court might declare that the proven acts constituted negligence, or it might submit such acts to the jury, and let the jury determine the question of negligence or no negligence.

It is clear in this case, under the recited facts, that the question of negligence or no negligence was a question for the jury, and not for the court. The Kansas City Court of Appeals has so viewed it in the opinion now before us for review. That court further says (196 S. W. 1. c. 413) as to instruction numbered 1 given for the plaintiff:

"The instruction is further criticized for the reason that it permits the jury to find for plaintiff without finding that the hypothetical facts stated in the instruc-

tion, if true, would constitute negligence. We think this criticism of the instruction is well taken. While it is true that the jury were required to find by the instruction that the defendant did not exercise ordinary care to prevent said board from falling and that in failing to exercise ordinary care so to prevent said boards from falling, defendant was guilty of a careless and negligent act, still it does not require the jury to find that the boards piled upon the dormer window or the scaffold were negligently permitted to remain there after they were or could have been discovered.

"The question as to whether defendant and his foreman were negligent in permitting the boards to remain at said places after they could have discovered their presence, was one for the jury, and the court should have required the jury to find that it was negligent for defendant to have so permitted them to remain. Defendant was not negligent as a matter of law in so permitting the boards to remain in such places. It was necessary in the progress of the building of the residence to have these pieces of boards near at hand as the men were working upon the siding and sheeting at the time and must of necessity have had the boards near at hand in order to carry on their work with reasonable celerity. It was necessary for these carpenters to have a place where they could temporarily place timbers which they were to use, and it was for the jury to say that the places in which they actually placed the timbers were reasonably safe places under all the circumstances. We believe that this instruction taken alone was erroneous."

The court then undertakes to point out how the omission of this instruction was cured by two instructions given for defendant. In other words the Court of Appeals says that this instruction for plaintiff did not require the jury to find the defendant guilty of a certain negligence, which negligence was of the very essence of plaintiff's case, and without which plaintiff had no case. The character of this instruction must not be overlooked. It is an instruction intended to cover the whole case for the plaintiff. It requires the jury to

find certain things, and then says to the jury that if
you do find such things you will find for plaintiff. In
an instruction of·this kind, the Court of Appeals finds
that a necessary element of plaintiff's case is not pre-
sented to the jury at all. Before plaintiff was entitled
to recover it was necessary for the jury to say that
certain acts of the defendant constituted negligence, and
this question of negligence or no negligence, was not
submitted to the jury, as found by the Court of Ap-
peals and yet·a direction was given to find for plain-
tiff. Such a defect in such an instruction, if there is
such defect, cannot be cured by any instruction given
to recover it was necessary for the jury to say that
for the defendant. It is not necessary for us to find that
there is such defect in the instruction. The Court of
Appeals says there is such defect, and violates our rule
when it says it was cured.

Where an instruction for the plaintiff undertakes
to cover the whole case, and where such instruction
contains a direction to find for the plaintiff, provided
the jury find the hypothetical facts. mentioned in the in-
struction in plaintiff's favor, and where such instruc-
tion omits a hypothetical fact which must be found in
favor of plaintiff before there can be a recovery, then
the omission of the last named hypothetical fact can-
not be cured by any instruction given for the defendant.
In such case, instead of the defendant's instruction
curing the omission, it produces a conflict in the instruc-
tions. This, because the plaintiff's instruction author-
izes a verdict for plaintiff without any finding for plain-
tiff upon a vital question, and if the defendant's in-
struction requires a finding for plaintiff upon this vital
question, before plaintiff is permitted to recover, then
there is a conflict, which is both pointed and danger-
ous. Which instruction will the jury follow? The
one for plaintiff which directs a verdict for her on the
more limited question of facts, or the one for defend-
ant which requires the finding of additional facts?
Imagine an ordinary jury discussing the matter. Mr.
A. (on the jury) reads the defendant's instruction, and
says, "We can't find for plaintiff unless we find this

fact," but Mr. B (likewise on the jury) answers, "Yes we can, just read instruction numbered 1 for plaintiff. It tells us that we should find for plaintiff if we find these facts [reading the hypothetical facts], and says nothing about what you suggest." Thus the conflict is made apparent.

In the case at bar (according to the ruling of the Court of Appeals), the instruction which directed a verdict for plaintiff left out of consideration one of the vital facts necessary to be found before a recovery could be had, and when such occurs in an instruction purporting to cover the whole case, as here, an instruction for defendant requiring a finding of that fact does not cure the plaintiff's instruction, but conflicts therewith. To further illustrate: Plaintiff's instruction covering the whole case and directing a verdict for plaintiff says, "If you find that plaintiff walked from A to B and then from B to C you will find for the plaintiff." Defendant's instruction says, "Unless you find that the plaintiff walked from A to B, and then from B to C, and then from C to D, you must find for defendant." Does defendant's instruction cure the defect in plaintiff's instruction (granting that there could be no recovery until the three distances were covered) or does it conflict therewith? Clearly the latter. So too, where there are three necessary facts in a negligence case, if the instruction for the plaintiff undertakes to cover the whole case, and directs a verdict, and leaves out one of the three necessary facts, no instruction for the defendant requiring a finding on this omitted fact can be given without being in conflict with the instruction for the plaintiff. The jury can't tell whether they must find only two facts or all three.

In the case of Wojtylak v. Coal Co., 188 Mo. l. c. 283, GANTT, J., makes this matter clear, in this language: "Plaintiff's instruction is a very long and general one and concludes with the direction that 'If you find these facts from the evidence in the case your verdict will be for the plaintiff.' This being so, the giving of a proper instruction for the opposite party could not have the effect of correcting the error, as the

two would be in conflict, and the jury at a loss to know which to obey. If the plaintiff's said instruction had fully covered all the necessary facts which the jury must find and the defendant's instruction had required the finding of a fact which was not necessary and thus had been more favorable to the defendant than the law allowed, then defendant could not have complained, but such is not the case with the instructions under review. [State v. Herrell, 97 Mo. 105; Gay v. Gillilan, 92 Mo. 250; Frederick v. Allgaier, 88 Mo. 598.] The jury might well have concluded under plaintiff's instruction that it was not at all necessary to have found that the roof of the mine was in fact dangerous, and that defendant knew, or by the exercise of ordinary care could have known that it was, but that the mere fact that defendant's pit boss ordered the plaintiff to go to work therein, coupled with the fact that the part of the roof did fall, was all that was necessary to entitle plaintiff to a verdict.''

The same doctrine is announced by WILLIAMS, C., in Hall v. Coal & Coke Co., 260 Mo. l. c. 367, and it was because we deemed the opinion of the Kansas City Court of Appeals in direct conflict with these two cases that our writ of *certiorari* was granted. The hearing in this court has not changed our views. We are convinced that the ruling by the Court of Appeals conflicts with the cases, supra, and that for this reason, if not for others, their record should be quashed.

The St. Louis Court of Appeals has taken the foregoing view of our cases. Thus in Traylor v. White, 185 Mo. App. l. c. 331, it is said: ''The rule is, that where plaintiff's instruction covers the whole case and authorizes a verdict for plaintiff on an erroneous theory of the law, one on the part of defendant touching the same matter will not supply a deficiency in plaintiff's instruction which omits to require the finding of facts essential to sustain the cause of action.'' The court cites Wojtylak v. Coal Co., 188 Mo. 260, as authority for the rule.

In Humphreys v. Railroad, 191 Mo. App. l. c. 721, it is likewise said: ''On this question the most recent

ruling in the Supreme Court goes to the effect that where plaintiff's instruction authorizing a verdict for him covers the whole case but omits a ground of negligence essential to his recovery, such may not be cured by another one of plaintiff's instruction, which is amply sufficient with respect to the matter omitted. [See Hall v. Coal & Coke Company, 260 Mo. 351.]''

The citation, supra, made by the Court of Appeals, is the page where the case begins. The local citation is 260 Mo. 1. c. 369, where Judge WILLIAMS uses this language: ''Neither can we say that the defect in instruction number 1 was cured by the giving of plaintiff's instruction number 3 which undertakes to set forth what facts would constitute a negligent assurance, etc. The terms, 'negligent assurance' or that the 'assurance was negligently given' are not contained in instruction number 1, and it could not be said that a definition of those terms would make clear the meaning of instruction number 1 which did not contain such terms. *Furthermore, even though instruction number 1 had contained those terms, all the facts constituting the actionable negligence should be required to be found by this instruction which attempted to cover the entire ground of actionable negligence.*'' (The italics are ours.)

To like effect is Walker v. White, 192 Mo. App. 1. c. 19, where it is said: ''In this view, defendant's instructions are not to be invoked in aid of that given on behalf of plaintiff in the instant case, for the omission relates to a material element of plaintiff's cause of action, which is to be found as a prerequisite to her right to recover. The instruction for plaintiff is, therefore, inconsistent with that of defendant.'' In the foregoing the court again cites the case of Wojtylak v. Coal Co., 188 Mo. 260.

Lastly in the case of Pearson v. Lafferty, 193 S. W. 1. c. 43, the St. Louis Court of Appeals again reiterates their understanding of our rule: ''It is unnecessary to discuss the instruction given and refused. It may be well to note, however, that plaintiff's first instruction is fatally defective, irrespective of the theory upon

which it proceeds, in that it purports to cover the entire case, but leaves out of consideration elements essential to plaintiff's recovery.  It is held that an instruction which purports to cover the entire case, and directs a verdict, cannot be pieced out by other instructions, despite the oft stated rule that instructions must be read and considered together.  [See Hall v. Coal & Coke Company, 260 Mo. l. c. 369.]''

In our judgment the St. Louis Court of Appeals has properly construed our rule, and the Kansas City Court of Appeals has misconstrued it in the case before us.  Our rule is, that if the instruction for the plaintiff purports to cover the whole case and directs a verdict, then if it be found that such instruction has omitted a necessary element requisite to the right of plaintiff to recover, then such omission is not, and cannot be cured by an instruction given for the defendant.

The instructions are in conflict, rather than the one curing the other.  So in the case at bar the Kansas City Court of Appeals violated the rule of this court when it held that the patent defect of instruction numbered 1 for plaintiff was cured by instructions given for the defendant.

IV.  We shall not discuss the sufficiency of the petition for the reason that for the error in instruction numbered 1, the Kansas City Court of Appeals will no doubt remand the case to the circuit court for a new trial, and the counsel for plaintiff in the light of the discussion of the question, may conclude to amend their petition, so that the question now urged may not be a vital one in the ultimate determination of the case.  The negligence charged is of the most general character, as will be seen, and the facts are now before the parties.  Of course in cases where the doctrine *res ipsa loquitur* applies, general negligence is permissible in the pleading, but for the reason last above indicated we will not now determine whether either the facts pleaded or proven bring the case within the rule.  It is sufficient to say that the present record of the Kansas City Court of Appeals should be quashed

*Petition.*

for the reasons stated in the preceding paragraph. It is so ordered.

All concur, except *Bond* and *Blair, JJ.,* who dissent, *Blair, J.,* in separate opinion.

BLAIR, J. (dissenting)—The Court of Appeals held an instruction bad. It then held the error cured. In this last holding its opinion conflicts with decisions of this court. This would warrant quashing the record only in case the instruction is in fact erroneous. I do not think it is. In such circumstances, nothing further appearing, the rule in State ex rel. v. Reynolds, 270 Mo. 1. c. 602, 603, is applicable, hence this dissent.