Melvin OBERHAUS, Respondent,

v.

Eugene Emmett EICHWALD, Appellant.

No. 45835.

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

J. O. Swink, Farmington, Freeland L. Jackson, Jackson, for appellant.

Schwartz & James, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondent.

**WESTHUES, Judge.**

Plaintiff Oberhaus filed this suit to recover damages from the defendant Eichwald in the sum of $16,072.45 for personal injuries, medical expenses, loss in earnings, and damages to his car claimed to have been caused by a collision of defendant's car with plaintiff's car. A trial resulted in a verdict for plaintiff for the full amount asked. Defendant appealed to this court.

Defendant briefed four main points. The first pertains to instruction No. 1 by which the case was submitted to the jury. The second and third assignments have to do with instruction No. 2 which instruction submitted the question of the elements of damages. In the fourth assignment, defendant contends that the verdict is excessive.

The collision giving rise to this lawsuit occurred on a Sunday morning between nine and ten o'clock on East McCarty Street over which Highway 50 is routed in Jefferson City, Missouri, a short distance east of Vetter's Lane, a north-south street intersecting said highway at right angles.

The evidence of plaintiff's and defendant's witnesses justifies the following statement as to how the collision occurred. On the morning in question, plaintiff was driving a 1953 Buick westwardly on Highway 50 and the defendant was driving a 1955 Chevrolet station wagon westwardly, following plaintiff's car. As these cars approached Vetter's Lane, there were two or three cars ahead of plaintiff. These cars slowed down to permit the car in the lead to make a left-hand turn into Vetter's Lane. The cars ahead of plaintiff came to a stop. At about this time, defendant's station wagon collided with the rear of plaintiff's car. Plaintiff was injured and his car was damaged. Plaintiff testified that he noticed the cars ahead of him gradually slow down as they approached Vetter's Lane and that he noticed the driver of the lead car giving signals that he intended to make a left-hand turn. Plaintiff stated that he, too, slowed down and when the car ahead of him stopped, plaintiff also stopped about 5 feet behind that car; that in 3 to 5 seconds after he had come to a standstill, defendant's station wagon crashed into the rear of plaintiff's car and drove it against the car ahead. Defendant, on the other hand, testified that he, too, noticed cars ahead slow down and that he did likewise but that plaintiff stopped very suddenly and collided with the car ahead of plaintiff; that he, the defendant, attempted to stop but was unable to do so and collided with plaintiff's car after plaintiff's car had collided with the car ahead of it.

■ The particular complaint of defendant as to instruction No. 1 is that plaintiff pleaded and proved that his car had come to a standstill prior to the time defendant's station wagon collided with it, but that the instruction authorized a verdict for plaintiff on a theory that defendant's station wagon collided with plaintiff's car before plaintiff's car stopped. There is no merit in this argument. Defendant, as well as plaintiff, claimed that the collision occurred after plaintiff's car stopped. That was an admitted fact. The point in dispute was that plaintiff claimed he stopped about 5 feet behind the car ahead and defendant said that plaintiff had collided with the car ahead before defendant's car collided with plaintiff's car. Instruction No. 1 complained of makes no reference as to whether plaintiff's car was in motion at the time of the collision. Note the wording of the instruction as to this question: "* * * and if you further find that at said time an automobile of the defendant was east of plaintiff's automobile and was being operated in a westwardly direction, and if you further find that defendant's automobile overtook plaintiff's automobile, and that defendant negligently and carelessly allowed his automobile to run into and collide with the rear end of the automobile of the plaintiff, and as a direct result of such negligence, if any, on the part of the defendant, plaintiff was injured, if you so find, * * *."

■ At defendant's request, the trial court gave an instruction submitting the question of plaintiff's contributory negligence. This instruction submitted contributory negligence in three particulars: failing to keep a lookout; suddenly stopping; and failing to signal intention of stopping in time to warn operators of cars approaching from the rear. The disputed issues were properly submitted by the instruction. Welch v. McNeely, Mo., 269 S.W.2d 871, loc. cit. 877(15, 16). Defendant cited the cases of Caddell v. Gulf, M. & O. R. Co., Mo.App., 217 S.W.2d 751, loc. cit. 756(6, 7), and Jones v. Kansas City, Mo., 243 S.W. 2d 318, loc. cit. 321, to support his contention. We are unable to discover wherein those cases support defendant's complaint of the instruction in question.

■ Defendant, in his second assignment, stated that instruction No. 2 is erroneous because it did not submit the proper measure of damages to plaintiff's car. The instruction permitted the jury to assess this item of damages on the basis of an estimate of the amount it would require to repair the car. Plaintiff offered evidence that it would cost $1,072.45 to repair the damages done. That was the only evidence on this question. Defendant did not object and cross-examined the witness on this subject. Defendant offered no evidence on this matter nor was there any evidence as to the market value of the car. It was in evidence that the car was a 1953 Buick and in good condition before the collision in question. In this situation, the defendant is in no position to complain. This very point was decided adversely to defendant's contention in General Exchange Ins. Corp. v. Young, Mo.App., 206 S.W.2d 683, loc. cit. 691(10) (11) (12, 13).

■ We find no merit in the third point briefed wherein defendant says that the trial court erred in instructing the jury authorizing damages for permanent injuries. It is claimed that the evidence did not authorize such damages. It was in evidence that the plaintiff had sustained an injury to his neck, often referred to as a "whiplash" injury, resulting in scar tissue. As to the permanency of the injury, Dr. R. E. Funsch testified as follows:

"Q. Do you have an opinion, Doctor, as to whether or not there will ever be some permanency as far as injury to his neck is concerned? A. There will be permanency.

"Q. In other words, he does have a permanent injury—and by 'permanent injury' you mean that it will last for the rest of his life, is that right? A. Correct."

On cross-examination, Dr. Funsch gave the following testimony:

"Q. What is the nature of this permanent condition that you find, Dr. Funsch? A. Restriction of motion of the neck due to soft tissue involvement and scarring, with the associating discomfort and intolerance to activity.

"Q. It that a positive diagnosis, sir, that there is scarred tissue in this man's neck? A. There is scar involved and restricted motion. There is scarred tissue in his neck."

■ The fourth and last point is on the question of the amount of the verdict. Defendant says, "A recovery for the full amount prayed for in a personal injury action cannot be sustained, where the items of damage are not proved or only partially proved." Plaintiff, in his petition, stated that his medical treatment cost him $306 and that he sustained a loss in earnings in the amount of $2,000. No specific amount was pleaded for the personal injuries sustained and no allegation was made as to the total amount of damages. The evidence as to medical bills showed that plaintiff had paid about $170 therefor and that he had paid the sum of $121 to a man to operate his store while plaintiff was being treated in a hospital. Defendant does not contend that the amount of the verdict is excessive because of the personal injuries sustained

by the plaintiff. This court dealt with a similar situation in the case of Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, loc. cit. 252 (3–5), 141 A.L.R. 674. It was there held that where a plaintiff in his petition alleged special damages but did not state his total damages nor allege the amount he had been damaged because of his personal injuries, a verdict for the full amount prayed for would be sustained even though the plaintiff failed to prove the special damages pleaded. The question was there fully considered and we see no reason for disapproving that case.

It follows that the judgment should be and is hereby affirmed.

All concur.